718 F.Supp. 10 (1989)
Lynn RANNELS
v.
MERIDIAN BANCORP, INC.
Civ. A. No. 89-4487.
United States District Court, E.D. Pennsylvania.
August 8, 1989.
*11 Lynn Rannels, Reinholds, Pa., pro se.
Daniel B. Huyett, Reading, Pa., for Meridian Bancorp, Inc.

OPINION AND ORDER
VAN ANTWERPEN, District Judge.
Plaintiff has filed a pro se complaint alleging that defendant's "Club 50" program, which provides discounts on various services to those who are 50 years of age or older, unconstitutionally discriminates against those who are under age 50. Specifically, plaintiff claims that the program violates the equal protection clause of the Fourteenth Amendment. In the instant matter, defendant moves for dismissal or in the alternative for summary judgment. Defendant argues that the complaint fails to allege that Meridian's conduct constitutes state action, and even if there were state action, the conduct is rationally related to a legitimate purpose and thus does not violate the Constitution.[1] We agree with defendant.
Because we will consider matters outside the pleadings, we will treat defendant's motion as a motion for summary judgment. See Castle v. Cohen, 840 F.2d 173, 179 (3d Cir.1988).[2] Fed.R.Civ.P. 56(c) instructs a court to enter summary judgment when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This rule provides the court with a useful tool when the critical facts are undisputed, facilitating the resolution of a pending controversy without the expense and delay of conducting a trial made unnecessary by the absence of factual dispute. Peterson v. Lehigh Valley District Council, 676 F.2d 81, 84 (3d Cir.1982); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary judgment is inappropriate, however, where the evidence before the court reveals a genuine factual disagreement requiring submission to a jury. An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine *12 issue for trial." Id. at 249, 106 S.Ct. at 2511.
In a summary judgment action, the moving party bears the initial burden of identifying for the court those portions of the record which it believes demonstrate the absence of a material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Following such a showing in a case where the non-moving party is the plaintiff and therefore bears the burden of proof, it must by affidavits or by the depositions and admissions on file "make a showing sufficient to establish the existence of [every] element essential to that party's case." Id. at 322, 106 S.Ct. at 2552. In making its ruling on a summary judgment motion, the court must view all inferences in a light most favorable to the non-moving party, United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); Continental Insurance So. v. Bodie, 682 F.2d 436 (3d Cir.1982), must resolve all doubts against the moving party, Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.1985), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and must take as true all allegations of the non-moving party that conflict with those of the movant. See Anderson, 477 U.S. at 255, 106 S.Ct. at 2513-2514.
The Fourteenth Amendment circumscribes "only such action as may fairly be said to be that of the States." Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). The Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." Id. In his complaint, plaintiff fails to allege any state action.[3] In his response to defendant's motion, however, plaintiff asserts that
Club 50 financial services are in fact extensively regulated by both state and federal authorities. These very regulations promote consumer and depositor confidence tantamount to dealing with the state itself. A portion of the gross profits obtained through this consumer confidence as well as the defendant's dual pricing and interest rates is ultimately used to purchase FDIC insurance.... The defendant also functions as a key component for the Federal Reserve Board in its monetary control policies. The relationship between the defendant and state action is so extensive and direct that the plaintiff considered it unnecessary to provide extensive detail in his complaint.
We must now determine whether these assertions, assuming they were made part of the complaint, can establish state action.
In Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785-2786, 73 L.Ed.2d 534 (1982), the Court analyzed the question of state action by focusing on three factors. First, to establish state action, the plaintiff must show that "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Blum, 457 U.S. at 1004, 102 S.Ct. at 2786 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453-454, 42 L.Ed.2d 477 (1974)). Second, for a court to consider a private decision state action, the state must exercise coercive power or provide such significant encouragement such that the choice must be deemed to be that of the State. Id. Third, state action may be found where a private entity has exercised powers that are traditionally the exclusive prerogative of the state. Id. at 1005, 102 S.Ct. at 2786. "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." Jackson, 419 U.S. at 350, 95 S.Ct. at 453 (electric utility's acts not state action even though it enjoys state-granted monopoly and is subject to extensive state protection and regulation). See also Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) *13 (in 42 U.S.C. § 1983 action,[4] private school director not acting under color of state law despite extensive governmental regulation of the school; although school performs function that serves public, its function not traditionally the exclusive prerogative of the state).
It is clear that the Meridian Club 50 program can not constitute state action. Meridian is 100% owned by private shareholders. (Yeager Affidavit ¶¶ 3-5). Meridian does not use government land or buildings, and is not dependant on government funds. (Yeager Affidavit ¶ 6). Club 50 was created for private purposes without any influence from a governmental entity. (Brittain Affidavit ¶¶ 5-6). Furthermore, courts have uniformly held that conduct by banks is not state action. See Morast v. Lance, 807 F.2d 926 (11th Cir.1987); Fletcher v. Rhode Island Hospital Trust National Bank, 496 F.2d 927 (1st Cir.), cert. denied, 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974); Oller v. Bank of America, 342 F.Supp. 21 (N.D.Cal.1972). But see Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (where state acts in concert with bank in attaching property upon ex parte application, conduct constitutes state action). In the case at bar, plaintiff's allegations fall far short of satisfying the state action requirement. The existence of federal and state banking regulations and Meridian's purchasing FDIC insurance is not sufficient to transform the private conduct of Meridian into state action.
Even if plaintiff could sufficiently allege state action, the Club 50 program would not violate the Constitution. To decide whether particular conduct is constitutional, we must first determine the level of scrutiny to apply to the conduct. Without hesitation, it is clear that we should apply the "rational relationship" test.[5] In Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 317-27, 96 S.Ct. 2562, 2568-74, 49 L.Ed.2d 520 (1976), the Supreme Court held that because it did not consider the elderly a suspect class, the rational relationship test applied to their age discrimination cases. Naturally, courts do not afford any greater deference to those under 50.
The rational relationship test is satisfied if any set of facts may be reasonably conceived to show that the conduct bears a rational relationship to the achievement of a legitimate state interest. McGowan v. State of Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 1104-05, 6 L.Ed.2d 393 (1961). The burden is on the plaintiff to show that there is no legitimate basis for the state action. Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940). Plaintiff has failed to sustain his burden. First, providing benefits to older citizens has long been recognized a legitimate state interest. For example, the tax system, the Social Security system, and the Pennsylvania Lottery, all provide benefits to older citizens. Second, the Club 50 program bears a rational relationship to that legitimate interest. In numerous cases, courts have upheld the constitutionality of programs that favor senior citizens. See e.g., Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972) (state system for allocating welfare which provided higher proportion of available funds to the aged); Acevedo v. Nassau County, New York, 500 F.2d 1078 (2d Cir. 1974) (abandoning housing plan for low income families, which would be occupied predominately by minorities, while continuing one for senior citizens did not deny equal protection). It is obvious that Meridian's Club 50 program can easily withstand the low level scrutiny of the rational relationship test.
*14 In sum, plaintiff's claims are so devoid of merit that they border on the legally frivolous and tread dangerously close to justifying Rule 11 sanctions. We suggest that plaintiff devote his youthful energies to a cause more worthy than the denial of picayune benefits to those whom time has rendered less fortunate than he. Therefore, for the reasons adduced above, we will grant defendant's motion for summary judgment.
An appropriate Order follows.
NOTES
[1] Defendant also argues that we should dismiss the complaint solely because, as required by F.R.Civ.P. 8(a)(1), it does not state the grounds upon which the court's jurisdiction depends. Because we construe pro se pleadings liberally, see Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), we will not dismiss plaintiff's complaint on such a technicality. If we were to deny defendant's motion to dismiss, we would allow plaintiff an opportunity to amend his complaint to reflect the jurisdictional requirements.
[2] We have notified defendant, and he has appeared before the court on August 8, 1989 for the purpose of arguing and presenting evidence in support of his position.
[3] Defendant urges us to dismiss the complaint for this reason alone. Again, because this is a pro se matter, we will be more forgiving and assume that plaintiff's complaint reflects the position he propounds in his brief.
[4] The § 1983 "color of state law" requirement is treated the same as the Fourteenth Amendment's "state action" requirement. Rendell-Baker, 457 U.S. at 838, 102 S.Ct. at 2769-2770.
[5] "Strict scrutiny" analysis is reserved for state action that involves either a suspect classification or a fundamental right. Murgia, 427 U.S. at 312 n. 3, 96 S.Ct. at 2566 n. 3. Middle level scrutiny is applied only to classifications based on sex. See Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).